Thomas **BALESTRACCI**

v.

**GENERAL DYNAMICS CORP.**

No. 3:00CV559 (JBA).

United States District Court,
D. Connecticut.

Nov. 9, 2001.

Thomas G. Moukawsher, Jeffrey M. Sklarz, Moukawsher & Walsh, Groton, CT, for Thomas Balestracci.

Stacie A. Boeniger, Nixon Peabody, Hartford, CT, for General Dynamics Corp.

**MEMORANDUM OF DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT**

[Doc.## 33, 38]

ARTERTON, District Judge.

Plaintiff Thomas Balestracci, an employee of General Dynamics ("GD") and a

member of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, Local 614 ("Boilermakers" or "Local"), as well as an umbrella union, the Metal Trades Council of New London County, AFL—CIO ("MTC"), lost wages and benefits as a result of an error in the seniority lists prepared by GD and used by GD and MTC in determining the order of layoffs and recalls. Because of the error, plaintiff was laid off before and recalled after another union member with less seniority, in violation of the MTC Collective Bargaining Agreement. After the error was discovered, MTC filed a grievance which was denied by GD as untimely, and plaintiff subsequently filed this suit under the Labor Management Relations Act ("LMRA"), § 301, 29 U.S.C. § 185, against GD. Plaintiff also asserts that GD breached the fiduciary duty owed to him under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a).

Currently before the Court are the parties' cross-motions for summary judgment. For the reasons discussed below, the Court finds that there are no genuine issues of material fact and plaintiff has proved as a matter of law that MTC breached its duty of fair representation; therefore, plaintiff's motion for summary judgment on liability is granted, and defendant's cross-motion is denied.

## I. Factual background

Balestracci was hired as a "burner" by the Electric Boat division of GD on September 9, 1974. As a burner, plaintiff was a member of the Boilermakers Local. Martin Sior was hired as an electronics mechanic on August 26, 1974, and at that time was a member of the International

Brotherhood of Electrical Workers, Local 261. On October 13, 1974, when Sior transferred into the burner position, he then became a member of the Boilermakers Local, and was trained by plaintiff.

Pursuant to the 1972–1975 Collective Bargaining Agreement ("CBA"), plaintiff's seniority date for purposes of layoff and recall was his hire date, September 9, 1974.[1] The CBA also provided that employees "transferring between occupational title represented by different Local Unions of the Metal Trades Council shall have seniority in the occupational title to which they are transferred as of the date of transfer for purposes of layoff and recall." 1972–75 CBA, Pl.Ex. B, at 48. Thus, because Sior was represented by a different Local prior to the transfer to the burner position, his seniority date for purposes of layoff and recall should have been his transfer date, October 13, 1974. However, the seniority lists prepared by GD erroneously listed Sior's seniority date as August 26, 1974, the date of his original hire.

The 1972–75 CBA required GD to provide MTC with seniority lists based on occupational title each January and July. In January 1975, GD first distributed to MTC a burner seniority list erroneously listing Sior as senior to Balestracci to MTC. The error was not discovered and corrected, and GD distributed "at least fifty (50) copies of the erroneous seniority tab runs . . . to the Metal Trades Council over the years and never once did the MTC or anyone else identify the error." Pl. Local R. 9(c) Statement, ¶ 20.

The burner seniority list was not used for lay offs until 1997, when GD determined that it would be forced to lay off employees in its Electric Boat division.

---

1. The parties agree that the seniority provision in subsequent CBAs has not substantively changed since 1973.

Pursuant to the erroneous seniority list, plaintiff was laid off on August 14, 1997, and Sior was laid off on March 27, 1998. When GD initiated recalls in 1999, Sior was recalled on July 6, 1999.

When Sior was recalled in July, fellow union member Jeannette Santoro, who remembered that Balestracci had trained Sior in the 1970s, contacted Balestracci to ask him whether Sior was junior to him, and advised him that Sior was back at work. Santoro also informed John Adamson, the president of the Boilermakers, that there might be a problem with Sior's seniority. Adamson contacted Sior, learned that Sior had previously been employed as an electrician, and together with Dave Benvenuti, a GD industrial relations department employee, reviewed the historical records and discovered the error in Sior's seniority date calculation.

Upon discovering the error, GD first sent a recall letter to Gerald Ruple, who was senior to both Sior and Balestracci.[2] When Ruple did not respond, GD recalled plaintiff on September 15, 1999. MTC initiated a grievance to recover back pay and lost benefits owed for the 42 weeks in which plaintiff was erroneously laid off. The grievance was denied by GD as untimely based on a 1979 Arbitration Decision, which held that " '[t]ime limits for [grieving an issue] begin to run whenever the Union has knowledge of the incident, or where it would have had this knowledge, if it had acted with reasonable care and diligence.' " Pl. Local R. 9(c) Statement, ¶ 31.[3] In light of that Arbitration Decision, MTC refused to pursue the grievance to arbitration, and withdrew the grievance without prejudice.

## II. Discussion

### A. *Summary Judgment*

A court shall grant a motion for summary judgment under Fed.R.Civ.P. 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir. 1991). The moving party bears the initial burden of establishing that no genuine issue of material fact exists and that the

---

**2.** Plaintiff argues that defendant impermissibly relied on its answers to interrogatories in its Local Rule 9(c) Statement. However, the answers are sworn to, and there is no evidence suggesting that the signatory lacked personal knowledge sufficient to comply with Fed.R.Civ.P. 59. Accordingly, they are properly considered part of the record.

**3.** The 1979 Arbitration Decision involved the maintenance painters' seniority list. In that case, a Mr. Bump was laid off before, and subsequently recalled after, a Mr. China, due to an error in the maintenance painters' seniority list. MTC grieved the violation of Mr. Bump's seniority rights, and GD argued that the claim was untimely. The arbitrator found that MTC and the Painter's Local (which had received copies of the seniority lists for its members from MTC) "had constructive knowledge of the error since it had seniority rosters going back to 1974 that incorrectly showed Bump as being junior to China." *In re Arbitration Between General Dynamics and MTC*, MTC 3987A–9, at 4. The arbitration also noted that "the Union failure to discover the erroneous layoff cannot be attributed to anything the Company did or did not do in late 1977." *Id.* In reaching this conclusion, the arbitrator relied in part on the fact that MTC had discovered that a number of other employees were incorrectly laid off in time to allow the necessary remedial action by GD, and that the MTC had not been prevented by GD from ascertaining the correct information. The arbitrator therefore concluded that MTC's failure to bring the grievance within twenty days of the incident giving rise to the grievance (Mr. Bump's erroneous layoff in 1977) precluded MTC from grieving it approximately fifteen months later when it obtained actual knowledge of the error. *Id.*

undisputed facts show that she is entitled to judgment as a matter of law. *See Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir.1995).

Once this initial burden has been met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir.2000).

On cross-motions for summary judgment "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (*citing Schwabenbauer v. Board of Educ. of City of Olean*, 667 F.2d 305, 313 (2d Cir.1981)). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer*, 667 F.2d at 314.

### B. LMRA Claim

The parties agree that because plaintiff asserts a "hybrid" LMRA claim, plaintiff must demonstrate a breach of the CBA by General Dynamics as well as a breach of the duty of fair representation by the Union in order to prevail on the LMRA, § 301 claim. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir.2001).

For purposes of these cross-motions, GD does not dispute that it breached the Collective Bargaining Agreement's seniority rule by dismissing plaintiff prior to Sior and then recalling Sior prior to plaintiff, because plaintiff actually was senior to Sior.[4] The central issue here, therefore, is whether either plaintiff or defendant has shown by an absence of disputed fact that MTC did—or did not—breach the duty of fair representation owed to plaintiff, thereby entitling that party to summary judgment.

In his motion for summary judgment, plaintiff alleges that two separate but interconnected failings by MTC violated the duty of fair representation owed to Balestracci and other union members: 1) the Union's arbitrary failure to timely file a grievance challenging the erroneous seniority lists as it obtained constructive knowledge of the error in 1975 when GD first provided a copy of the erroneous list to MTC, and 2) the Union's arbitrary failure to implement any protective measures to ensure the accuracy of the seniority lists—particularly in light of the 1979 Arbitration Decision and the Union's knowledge that the seniority lists were "riddled

---

4. *See* Def. Reply Br. at 1–2 ("For purposes of this Motion only, Electric Boat concedes that it erred regarding Plaintiff's co-worker's seniority date, although Electric Boat does not concede that this error constituted a breach of the CBA. Nevertheless, even if it did constitute a breach of the CBA, plaintiff cannot prove that his Union breached *its* duty to him, so his claim fails as a matter of law.") (emphasis in original).

with mistakes." Plaintiff concedes, however, that MTC's decision not to pursue the 1999 grievance to arbitration did not breach the duty of fair representation since it would be a futility in light of the precedent created by the 1979 Arbitration Decision.

In response, defendant argues first that this allegedly arbitrary conduct occurred in 1975 when the Union first received a copy of the erroneous list and failed to identify the error in the list, and is now time-barred. GD further argues that there is no evidence in the record that the Union had actual knowledge that the burner lists were inaccurate, and that absent any such knowledge or other evidence that MTC acted with bad faith, the Union's failure to implement protective procedures was at worst negligent.

Defendant's reasoning places plaintiff in something of a catch–22 illustrating precisely the consequences to the union employee of its Union's failure to protect his rights under the CBA: because the Union did not have actual knowledge of the 1975 error, it did not act in bad faith by not correcting the error at some time prior to the layoff in 1997, when the error first impacted plaintiff, but nonetheless its grievance was untimely when it did acquire actual knowledge of the error, based on the 1979 Arbitration precedent, because the Union knew or should have known of the error as early as 1975. Properly framed, the question before this Court then is whether, in light of the 1979 Arbitration Decision imputing *constructive* knowledge of such errors to the Union, MTC breached the duty of fair representation by taking no steps thereafter to ensure the accuracy of the seniority lists before plaintiff's layoff occurred, and whether plaintiff's challenge is timely.

### 1. *Statute of limitations*

 The statute of limitations for duty of fair representation claims is six months. *See DelCostello,* 462 U.S. at 169, 103 S.Ct. 2281; *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989); *King v. New York Telephone Co.,* 785 F.2d 31, 33 (2d Cir.1986). This statute of limitations applies to both elements of a hybrid § 301 claim. *See DelCostello,* 462 at 169–70, 103 S.Ct. 2281 ("When the 6–month period of § 10(b) has passed, the employee should no longer be able to challenge the alleged breach of duty by his union, and as this is a precondition for maintaining the [hybrid] contract action, he should not be able to challenge the employer's action either."). The limitations period begins to run " 'when plaintiffs knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred.' " *Cohen v. Flushing Hosp. and Medical Ctr.,* 68 F.3d 64, 67 (2d Cir.1995) (*quoting Santos v. District Council,* 619 F.2d 963, 969 (2d Cir.1980)).

 Defendant argues that the date of filing of plaintiff's Amended Complaint, October 4, 2000, should be used for calculating the six month statute of limitations period. However, Fed.R.Civ.P. 15(c)(2) provides for relation back of amendments to complaints to the original filing date for statute of limitations purposes where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Although the precise nature of plaintiff's theory of breach has been somewhat evolutionary, and finally coalesced into the claim described above only at oral argument, the Court finds that the alleged breach plaintiff now asserts did sufficiently arise out of the conduct alleged in the original Complaint to justify relation-back to the March

24, 2000 filing date of the original Complaint. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 125 (2d Cir.1994) (permitting relation back of new legal claims where they arose out of the same events alleged in the original complaint); *Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248, 255–56 (S.D.N.Y.1987) (amendment relates back if it makes more specific what has already been alleged, but will not relate back if it sets forth a new set of operative facts), *aff'd*, 842 F.2d 612 (2d Cir.1988).

■ Alternatively, defendant claims that even if March 24, 2000 is to be used for statute of limitations purposes, the alleged breach of the duty of fair representation occurred in 1975 when MTC failed to timely detect the error, and is thus time-barred. ·However, as the basis for plaintiff's alleged breach is not simply the failure to detect the error in 1975, but rather MTC's alleged failure to take *any* steps whatsoever to ensure the accuracy of the seniority lists despite the adverse precedent of the 1979 Arbitration Decision, the Court finds that plaintiff's claim is timely because it was brought within six months of when he knew or should have known of the breach, i.e., when the Union withdrew his grievance as untimely under the 1979 arbitral ruling.

■ "Where a union refuses or neglects to assist a union member, decides to stop assisting a member, or acts against the interests of a member, a breach of duty by the Union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Ghartey*, 869 F.2d at 165. Prior to 1997, plaintiff had no knowledge or reason to know of the constructive noticed imposed on and the inaction by the Union, because no action affecting him had even been taken in reliance on the erroneous seniority list, and when plaintiff was terminated in 1997, he was unaware that he had been improperly laid off before Sior because he and Sior worked different shifts. When plaintiff was telephoned by Santoro in late August 1999 and informed that Sior had been recalled from layoff, plaintiff then was on notice only that "a problem may exist with [his] and Mr. Sior's seniority since [he] was senior to Mr. Sior and had not been recalled even though Mr. Sior had been recalled," Aff. of Thomas Balestracci, at ¶ 21.

However, plaintiff's claim of breach of duty of fair representation is not simply that the Union failed to ensure that the seniority lists were correct, but rather that in light of the 1979 Arbitration Decision holding that MTC had constructive knowledge of mistakes in seniority lists which it regularly received copies of for the purpose of ensuring accuracy and it had the means to verify with GD records, the Union's failure to ever take any action to ensure the accuracy of the lists was a breach of its duty of fair representation by failing to protect his interests. It was not until plaintiff was informed on February 18, 2000 of the basis for MTC's determination that pursuing the grievance was futile, i.e., that MTC had been deemed to have constructive notice of any errors in lists it received but had taken no responsive action to prevent plaintiff from being improperly laid off, that plaintiff became aware of the conduct by the Union that forms the basis for the breach he now alleges. *Cf. Cohen*, 68 F.3d at 69 (statute of limitations not tolled where plaintiff should have known that union was not representing him when it did not file a grievance on his behalf within the 10 day period provided under the CBA). Accordingly, plaintiff's hybrid LMRA claim is not barred by the six-month statute of limitations.

## 2. Breach of the duty of fair representation

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *accord Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 74, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *Spellacy v. Airline Pilots Ass'n–Intern.*, 156 F.3d 120, 126 (2d Cir.1998). "[T]he union's statutory duty of fair representation protects the individual employee from arbitrary abuses of the settlement device by providing him with recourse against both employer (in a § 301 suit) and union. . . ." *Vaca*, 386 U.S. at 193, 87 S.Ct. 903.

Plaintiff makes no claim that the Union's conduct was in any way in bad faith.[5] Indeed, MTC's prompt response in obtaining the recall of plaintiff and attempt to pursue the grievance upon actually discovering the error demonstrate it has acted in good faith.

Plaintiff maintains, however, that MTC's failure to take any steps at all to ensure the accuracy of the seniority lists it received from GD after 1979, particularly given its duty to enforce the CBA and the consequences of the 1979 Arbitration Decision, was arbitrary. Union conduct has been found to be arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside the range of reasonableness as to be irrational." *Id.* at 129 (*citing O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127, internal quotations omitted). "[A]rbitrary conduct amounting to a breach is not limited to intentional conduct by union officials but may include acts of omission which, while not calculated to harm union members, may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *National Labor Relations Bd. v. Local 282, IBT*, 740 F.2d 141, 147 (2d Cir.1984) (citations and internal quotations omitted); *accord Cruz v. Local Union No. 3 of Int'l Bhd.*, 34 F.3d 1148, 1153 (2d Cir.1994).

"The doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check, for a 'wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents.'" *United Steelworkers of America v. Rawson*, 495 U.S. 362, 374, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (*quoting Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). Thus, courts have consistently held that "mere negligence, even in the enforcement of a collective-bargaining agreement, [does] not state a claim for breach of the duty of fair representation." *Id.* at 372–73, 110 S.Ct. 1904.

Here, however, it is undisputed that MTC did nothing to ensure the accuracy of the seniority lists prepared by GD and relied upon by GD in calculating seniority for lay offs and rehiring.[6] This

---

5. A union's conduct is in bad faith when it acts with an improper motive, intent or purpose. *Spellacy*, 156 F.3d at 126 (citation omitted). "Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Id.*

6. Although Adamson stated in his deposition that the stewards would compare the lay off orders to the seniority lists to verify that lay offs occurred in the proper order, because the accuracy of seniority lists themselves was never verified by either the Local or MTC, this "safeguard" did nothing to detect errors such as that giving rise to this litigation.

failure to act must be assessed in light of the 1979 Arbitration Decision, which involved both MTC and GD, and which alerted MTC to the fact that there were some errors in the seniority lists prepared by GD, but, more importantly, put MTC on notice of the dire consequences to its members if it failed to identify errors in the list: that grievances based on seniority errors in the GD lists would be deemed untimely if the errors had not been brought to GD's attention in time for remedial action by GD.[7]

When placed in this context, MTC's unexplained failure to take even the simple step of posting the seniority lists and asking members to give it information about any inaccuracies they found and/or comparing the listings with the hiring documentation, which Adamson acknowledged was done by the Local after the denial of Balestracci's 1999 grievance as untimely, falls short of minimum standards of fairness to its member employees, who, like Mr. Balestracci, relied on MTC to ensure GD's compliance with the Collective Bargaining Agreement, including its seniority protections. *Cf. NLRB v. Local 282, IBT,* 740 F.2d at 147 (union's reliance on oral announcement and word of mouth to ensure that members received notice of an adverse arbitration award which required members promptly to take action to protect their seniority interests was arbitrary when the union could not rationally have believed that the majority of members would receive the oral notice, and union

therefore failed to protect members' interests).

Although GD argues that MTC's conduct must be assessed in light of the need for deference to union decision-making, there is no decision-making at issue here because absolutely no explanation has been given for MTC's inaction. *See Ruzicka v. General Motors Corp.,* 649 F.2d 1207, 1212 (6th Cir.1981) (whether a union's conduct is arbitrary turns on whether "the union can articulate a sufficient legal rationale to justify the manner in which a grievance has been handled"); *cf. Vencl v. International Union of Operating Engineers,* 137 F.3d 420, 425 (6th Cir.1998) (untimely filing of grievance because business manager was on vacation is a breach of duty of fair representation because "only reasoned conduct, not irresponsible inattention" should be deemed non-arbitrary). Given the absence of any union effort to protect members' seniority rights after the 1979 Arbitration by verifying the GD seniority lists it received, this is not a case of second-guessing the adequacy of MTC's efforts to ensure the accuracy of the seniority list. *Cf. Barr v. United Parcel Service, Inc.,* 868 F.2d 36, 43 (2d Cir.1989) (tactical errors in failing to present witnesses and inadequate representation by union business agent are insufficient to demonstrate bad faith or arbitrariness). Rather, it appears here that MTC inexplicably paid no attention to the serious consequences of an arbitration decision to which it was a par-

---

7. The 1979 Arbitration Decision shows that MTC had actual notice of errors in at least one of the seniority lists prepared by GD. The Decision related to the error in Mr. Bump's position on the Maintenance Painters list, but also noted that MTC had identified and corrected other errors in the list, and that GD had not acted to prevent MTC from identifying errors. Although the Court disagrees that this supports plaintiff's assertion that MTC had knowledge that the seniority lists were

"riddled with errors," GD has not set forth anything from which it could be inferred that the errors in the Maintenance Painters list were so singular that MTC would not have been alerted to the possibility of additional errors, such that the failure to take any prophylactic steps to mitigate the future consequences of the Arbitration Decision by verifying the accuracy of other GD lists could be deemed rational.

ty, and took no steps to safeguard the seniority rights of its members for almost twenty years, and in essence simply acquiesced in GD's version of its members' seniority rights. No reason has been proffered for MTC's complete inaction, and in the absence of any explanation related to legitimate union interests, on these undisputed facts, the Court concludes as a matter of law that MTC's conduct was arbitrary and in breach of the duty of fair representation owed to plaintiff.

## C. *ERISA claim*

Plaintiff seeks benefits under ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1), for benefits owed under the terms of the GD plan for the period when he was wrongfully laid off. As plaintiff has shown his entitlement to summary judgment on the substantive § 301 claim, and defendant does not dispute that plaintiff is entitled to ERISA pension credits if he prevails on the § 301 claim, plaintiff's motion for summary judgment is granted as to liability on his claim for benefits under § 502(a)(1)(B). Plaintiff's alternative breach of fiduciary duty claim under § 502(a)(3) is moot in light of the foregoing.

## III. Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment as to liability [Doc. # 33] is GRANTED, and defendant's motion for summary judgment [Doc. # 38] is DENIED.

IT IS SO ORDERED.